UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAGUARD ELECTRONICS, LLC,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>AUDIOVOX CORPORATION,<br><br>　　　　　　　Respondent. | Case No. 2:22-cv-01651-FLA (MRWx)<br><br>**ORDER GRANTING PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD [DKT. 1]; AND DENYING RESPONDENT'S PETITION TO VACATE ARBITRATION AWARD [DKT. 25]** |

## RULING

Before the court is Petitioner Seaguard Electronics, LLC's ("Seaguard") Petition to Confirm Arbitration Award ("Petition to Confirm," Dkt. 1) and Respondent VOXX International Corporation's ("VOXX," formerly known as Audiovox Corporation) Counter-Petition to Vacate Arbitration Award ("Petition to Vacate," Dkt. 25). On May 31, 2022, the court found the Petitions suitable for resolution without oral argument and VACATED the May 27, 2022 hearing on the Petitions. Dkt. 31; *see* Fed. R. Civ. P. 78(b); Local Rule 78-1.

For the reasons stated herein, the court GRANTS Seaguard's Petition (Dkt. 1) and CONFIRMS the Partial Final Award with Regard to the Bifurcated Issues ("Final Award," Dkt. 1-11). VOXX's Petition to Vacate (Dkt. 25) is DENIED.

1

# BACKGROUND

As stated in the Final Award, on February 28, 2007, Seaguard and VOXX entered into an agreement titled "SEAGUARD ELECTRONICS, LLC [¶] Audiovox Corporation Supply Agreement [¶] Seaguard™ GPS Tracking "Systems" (the "Supply Agreement," Dkt. 1-2). Final Award at 4. It is undisputed the Supply Agreement governed the relationship between Seaguard and VOXX. *Id.* Both parties relied on the validity and enforceability of the Supply Agreement during the arbitration. *Id.*

Pursuant to the Supply Agreement, VOXX "agree[d] that Seaguard shall be the exclusive manufacturer of GPS tracking systems for [VOXX] and Seaguard agree[d] that said GPS tracking products sold to [VOXX] shall be exclusively provided to [VOXX] within the Retail, New Car and Original Equipment markets within North America or other territories where [VOXX] distribute[d] said Product." Supply Agreement at 1. The Supply Agreement included a minimum purchase obligation whereby VOXX agreed to purchase 2,000 units of the "GPS Theft Recovery and Tracking System" per month, at a price of $159 per unit. *Id.* ¶¶ 8–9 & Ex A.

Paragraph 9 of the Supply Agreement provided in relevant part:

> If Purchaser fails to meet the applicable portion of its Term Purchase Commitment at any of the specified milestones, SEAGUARD may, at its sole option: (i) assess a shortfall change equal to the difference between the applicable portion of the Term Revenue Commitment and Purchaser's aggregate, actual contributory charges invoiced under the Agreement (and any other eligible separate SEAGUARD Express Services Agreement) as of the milestone date (the "Shortfall Charge"[)]; and/or (ii) renegotiate this Agreement and the Service Exhibits at rates and terms mutually acceptable to SEAGUARD and Purchaser. If Purchaser does not satisfy the Term Purchase Commitment by the end of the Initial Term, or it's [sic] milestones as defined above, then Purchaser agrees, in addition to all other charges due under the Agreement, to pay any assessed Shortfall charges or purchase the number of Products necessary to bring it in to compliance with the portion of the Purchaser's Term Commitment outstanding as of the time of said milestone.

///

The Supply Agreement provided for an initial term of three (3) years that was automatically renewed for successive one (1) year terms until terminated. *Id.* at 1, 9 ¶ 18. The final automatic renewal period ended on February 28, 2018, when Seaguard declared the Agreement terminated after its principal discovered VOXX had stopped selling Seaguard's GPS tracking products and had violated the exclusivity provision of the Supply Agreement by advertising and selling its competitors' GPS tracking systems. Final Award at 31, 72.

Seaguard commenced the Arbitration in August 2018 by filing a demand for arbitration with the American Arbitration Association ("AAA"). *Id.* at 5; Dkt. 1-3 (Arbitration Demand). Rebecca Callahan, Esq. (the "Arbitrator") was appointed as the arbitrator. Dkt. 1-4. After a case management conference conducted on December 10, 2020, the Arbitrator issued an order bifurcating the parties' contract-related claims, counterclaims, defenses, and denials (the "Bifurcated Issues") from the parties' patent-related claims, counterclaims, defenses, and denials. Final Award at 6. The Arbitrator conducted ten (10) days of evidentiary hearing proceedings on the Bifurcated Issues on June 21 through 30, and August 20 and 27, 2021. *Id.* at 9.

The evidentiary hearing on the Bifurcated Issues was concluded on August 27, 2021, after the parties rested their respective cases and provided oral closing arguments. *Id.* at 10. The parties submitted concurrent closing briefs on September 24, 2021, and concurrent reply briefs on October 14, 2021. *Id.* at 10–11. On October 18, 2021, the parties were notified that the record in the evidentiary hearing on the Bifurcated Issues was closed as of October 14, 2021. *Id.* at 11.

On November 29, 2021, the Arbitrator issued the Interim Award with Regard to the Bifurcated Issues (the "Interim Award." Dkt. 1-9 ("Interim Award"). On January 4, 2022, VOXX filed a Motion to Modify Arbitration Award (the "Motion to Modify"). Dkt. 25-15. Seaguard filed its opposition to the Motion to Modify on February 7, 2022. Dkt. 27-11. The Arbitrator issued the Final Award on March 3, 2022. Final Award at 77.

## LEGAL STANDARD

On application for an order confirming an arbitration award pursuant to the Federal Arbitration Act ("FAA"), the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9; *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.* "[F]ederal court review of arbitration awards is extremely limited." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992), *cert. denied* 506 U.S. 1050 (1993).

"The courts should not reverse even in the face of erroneous interpretations of the law," and "an arbitration award will not be set aside unless it evidences a 'manifest disregard for the law.'" *Id.* "The manifest disregard exception requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). "Rather, to demonstrate manifest disregard, the moving party must show that the arbitrator 'understood and correctly stated the law, but proceeded to disregard the same.'" *Id.* (brackets omitted). "Moreover, to rise to the level of manifest disregard, 'the governing law alleged to have been ignored by the arbitrators must be *well defined*, *explicit*, and *clearly applicable*.'" *Id.* at 879–80 (emphasis in original, brackets omitted).

"In the absence of an express agreement to the contrary, procedural questions are submitted to the arbitrator, either explicitly or implicitly, along with the merits of the dispute." *Langstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 643 (9th Cir. 2010). "'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." *Id.* at 644 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)).

## DISCUSSION

"Section 10 of the FAA permits vacatur 'where the arbitrators exceeded their powers.'" *Langstein*, 607 F.3d at 643 (citing 9 U.S.C. § 10(a)(4)). "A party has 'a right to arbitration according to the terms for which it contracted, and arbitrators exceed their powers for purposes of § 10(a)(4) when they 'act outside the scope of the parties' contractual agreement.'" *Id.* (citations omitted). Courts, however, "have no authority to vacate an award solely because of an alleged error in contract interpretation," and must confirm the award if "the arbitrator's interpretation was 'plausible.'" *Id.*

### A. Whether the Arbitrator Disregarded the Supply Agreement

VOXX requests the court vacate the Final Award on the grounds that the Arbitrator exceeded her powers by disregarding the operative contract. Dkt. 25-1 ("Pet. Vacate Mem.") at 1, 11.

First, VOXX contends the Final Award directly contradicts the terms of the parties' agreement because the Arbitrator awarded Seaguard damages based on the Shortfall Charge, while setting aside VOXX's right to elect instead to "purchase the number of Products necessary to bring it in to compliance with the portion of the Purchaser's Term Commitment outstanding" (the "Purchase Rights"). Pet. Vacate Mem. at 13, 17–18.

The Final Award notes that "[i]n its Motion to Modify, VOXX contend[ed] that the Interim Award [was] 'ambiguous' or 'incomplete' because it failed to give VOXX the right to purchase Seaguard GPS tracking system devices <u>now</u> in lieu of paying the compensatory damages assessed in the Interim Award." Final Award at 70. As the Arbitrator noted, however, "VOXX never pleaded an affirmative counterclaim or defense that it had a <u>current</u> right to purchase or require supply performance by Seaguard under the Supply Agreement," *id.* at 72 (emphasis in original), and "VOXX never requested such relief during the course of the proceedings on the Bifurcated Issues," *id.* at 70. Accordingly, it was well within the Arbitrator's powers to refuse to

5

modify the Interim Award to allow VOXX to exercise Purchase Rights it had not timely requested. *See Langstein*, 607 F.3d at 644 ("'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide.").[1] The court will not vacate the Final Award on this basis.

Second, VOXX contends the Arbitrator exceeded her powers by ignoring the provision prohibiting the award of "punitive, incidental, consequential, exemplary, reliance or special damages, including damages for lost profits." Pet. Vacate Mem. at 15. According to VOXX, the Arbitrator's award is "punitive" because it awards Seaguard millions of dollars without any finding that Seaguard was injured." *Id*. The court disagrees.

The Final Award found VOXX breached its obligations under the Supply Agreement by failing to: "1. [p]urchase GPS tracking systems exclusively from Seaguard for sale to the Retail, New Car and Original Equipment markets," and "2. [p]urchase a minimum of 2,000 units per month." Final Award at 41–42. Paragraph 9 of the Supply Agreement provides: "If Purchaser fails to meet the applicable portion of its Term Purchase Commitment at any of the specified milestones, SEAGUARD may, at its sole option: (i) assess a shortfall change equal to the difference between the applicable portion of the Term Revenue Commitment and Purchaser's aggregate, actual contributory charges invoiced under the Agreement … as of the milestone date (the 'Shortfall Charge'[)]." The Arbitrator determined Seaguard was entitled to $39,444,745 in total damages, based on the total Shortfall Charge owed and unpaid. Final Award at 43–45.

---

[1] Furthermore, the Arbitrator's determination in the alternative that VOXX's Purchase Rights under the Supply Agreement expired in 2018, when Seaguard terminated the agreement based on VOXX's material breaches of the agreement and filed the Arbitration—not three years later, after the close of evidence and the Arbitrator issued the Interim Award, Final Award at 72–73—was a plausible interpretation of the terms of the agreement that must be upheld by this court. *See Langstein*, 607 F.3d at 643.

The Arbitrator's damages calculation and award was based on a plausible interpretation of the Supply Agreement. *See* Cal. Civ. Code § 3300.[2] Thus, the court will not vacate the award on this basis. *See Langstein*, 607 F.3d at 643.

    **B.**    **Whether VOXX Was Denied Fair Notice of Seaguard's Demand for Damages**

On July 14, 2021, Seaguard served notice that, pursuant to AAA Rule R-6, it was increasing the amount of its claim from $9,999,999 to $40 million, with an acknowledgement e-mail from the Case Manager that the required filing fees had been received and applied by the AAA. Dkt. 27-3. Under AAA Rule R-32(b):

> A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the

---

[2] VOXX argues "Seaguard made no showing that VOXX's failure to purchase the minimum amount of product caused Seaguard an actual detriment in the amount of the Shortfall Charge (*i.e.*, nearly $40,000,000)." Pet. Vacate Mem. at 16. VOXX cites *BASF Corp. v. Waterpaper, Inc.*, Case No. 2:18-cv-04415-ODW (GJSx), 2018 WL 5816098, at *5 (C.D. Cal. Nov. 5, 2018), to argue that "a minimum purchase requirement can become punitive if the penalty bears no relationship to the harm suffered." Pet. Vacate Mem. at 16. In *BASF*, 2018 WL 5816098, at *1, 6, the district court denied a plaintiff's request for liquidated and expectation damages on a motion for default judgment, finding the plaintiff would be disproportionately compensated if the defendant were required to pay the full amount of a minimum purchase requirement of the parties' non-exclusive purchase agreement. Here, unlike in a motion for entry of default judgment, the Arbitrator heard evidence for ten days and found the minimum purchase commitment to be a term the parties negotiated specifically to compensate Seaguard for the cost of development and testing of the GPS tracking products and the exclusive supply arrangement VOXX demanded. Final Award at 26, 68–69. The Arbitrator's award is a "plausible" interpretation of the agreement and does not evidence a "manifest disregard of the law." *See Payne v. Pathe Studios, Inc.*, 6 Cal. App. 2d 136, 141–42 (1935) (upholding minimum payment clause of exclusive contract). *BASF* did not involve an evidentiary hearing or any similar contractual provisions and, thus, is inapposite.

arbitrator.

Final Award at 10 n. 8.

On July 30, 2021, VOXX filed a response "acknowledg[ing] that AAA Commercial Arbitration Rule R-6 provides a procedure for increasing or decreasing the amount of claims," and "reserv[ing] any and all rights, including objections, and defenses relative to the timing, substance, and presentation of such change." Dkt. 30-3 (Brown Suppl. Decl., Ex. B).  Despite this reservation of rights, VOXX did not object to the increase during the Arbitration or argue it was given insufficient notice, after having multiple opportunities to do so at the August 20 and 27, 2021 hearings and in its closing brief.  *See* Dkt. 25-5 (Brown Decl. Ex. C, VOXX Closing Br.).  As VOXX did not object to Seaguard's increase of its damages claim during the Arbitration, the court finds the Arbitrator did not exceed her powers by allowing Seaguard to increase its damages claim.  *See Langstein*, 607 F.3d at 644 ("'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide.").  The court will not vacate the Final Award on this basis.

VOXX contends the Arbitrator facilitated a fundamentally unfair hearing by permitting Seaguard to increase the amount of its claim from $9,999,999 to $40 million mid-hearing, after VOXX had rested its defense. Pet. Vacate Mem. at 19–21.  VOXX cites *Emerald Aero, LLC v. Kaplan*, 9 Cal. App. 5th 1125, 1142 (2017), to argue that an arbitrator exceeds her powers by allowing a party to increase a party's damages demand without adequate and fair notice. Pet. Vacate Mem. at 19.  *Emerald*, 9 Cal. App. 5th at 1130, involved review of an arbitration award pursuant to California Code of Civil Procedure § 1286.2, and is inapposite to the subject action, which involves review under the FAA.  To the extent the same standards apply, *Emerald* is distinguishable.

In *Emerald*, 9 Cal. App. 5th at 1141–42, the California Court of Appeal held an arbitrator exceeded his authority by awarding punitive damages without adequate

8

prior notice of the plaintiffs' increase of their damages claim, in violation of AAA Rule R-6. The *Emerald* plaintiffs argued they provided notice by e-mailing the defendant a copy of their arbitration brief on the day before the arbitration hearing. *Id.* at 1142. The California Court of Appeal disagreed, holding that "attaching a brief to an e-mail less than 24 hours before the merits hearing did not constitute notice calculated to apprise the opposing party of a new and substantially increased monetary claim, nor did it provide the opposing party with a fair opportunity to assert a challenge to the new punitive damage claim." *Id.* at 1141–42. The court additionally noted other procedural shortcomings related to notice called into question the fairness of the damages award, including that it was unclear whether the defendant was given notice of several of the critical hearings and orders in the case. *Id.* at 1142–43.

  Here, VOXX received sufficient notice of Seaguard's increased damages claim to provide for a fair hearing. Although VOXX contends Seaguard gave notice of its increase in claim after VOXX rested its case, Pet. Vacate Mem. at 3, Seaguard gave notice more than six weeks before VOXX's damages expert testified on August 27, 2021, and more than ten weeks before VOXX submitted its closing brief on September 24, 2021. *See* Final Award at 9, 14; Dkt. 27-15 (Breidenbach Suppl. Decl. Ex. 14, Holt Dep.); Dkt. 25-5 (Brown Decl. Ex. C, VOXX Closing Br.). VOXX did not object to Seaguard's increase of its damages claim at any time during the Arbitration or request additional time to respond. *See* Dkt. 30-3 (Brown Suppl. Decl., Ex. B.); Dkt. 25-5 (Brown Decl. Ex. C, VOXX Closing Br. Unlike in *Emerald*, 9 Cal. App. 5th at 1141, where the court held the plaintiffs failed to give valid notice under AAA Rule R-6, VOXX does not argue Seaguard's July 14, 2021 notice violated any statute, AAA Rule, or order. *See* Pet. Vacate Mem. at 19–21; Pet Vacate Reply at 11–12. VOXX, thus, fails to demonstrate the Final Award must be vacated because it was denied notice and a fair opportunity to be heard regarding Seaguard's increased damages claim.

///

VOXX additionally argues it was denied fair notice of the stakes of the arbitration because the Arbitrator allowed Seaguard to present a new expert report mid-hearing and "inform[ed] the parties there [was] likely no applicable statute of limitations at the very end of [the] hearing…." Pet. Vacate Mem. at 20. While VOXX argues these actions constituted "fundamental violations of VOXX's right to notice of the stakes of the arbitration," *id.* at 20–21, VOXX does not cite any legal authority to establish that the Arbitrator's rulings violated any of the AAA Rules or constitute grounds for the court to vacate the Final Award.[3] The court, therefore, will not vacate the Final Award on this basis. *See A.G. Edwards*, 967 F.2d at 1403.

## CONCLUSION

In sum, VOXX fails to establish the Arbitrator exceeded her powers in issuing the Final Award. The court, therefore, GRANTS Seaguard's Petition (Dkt. 1) and CONFIRMS the final arbitration award. *See* 9 U.S.C. § 9. VOXX's Petition to Vacate (Dkt. 25) is DENIED. Seaguard shall file a proposed judgment within fourteen (14) days of this Order.

IT IS SO ORDERED.

Dated: July 18, 2023

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[3] VOXX cites *Emerald*, 9 Cal. App. 5th at 19 (invalid pincite), to argue that the court may look to "other procedural shortcomings" that may "call into question the fairness of the damages award." Pet. Vacate Reply at 10. *Emerald*, 9 Cal. App. 5th at 1142–44, however, did not discuss or consider the specific objections VOXX raises here (i.e., the Arbitrator's acceptance of a supplemental expert witness report and denial of VOXX's statute of limitations defense), and does not establish that these constitute grounds to vacate an arbitration award. To the extent VOXX argues the Arbitrator's rulings on these procedural matters were erroneous, the limited grounds for vacatur in 9 U.S.C. § 10(a), do not permit the court to review the Arbitrator's decision on these matters. *See Langstein*, 607 F.3d at 643–44; *Fang v. Lynch*, 810 Fed. App'x 525, 527 (9th Cir. 2020).